# IN THE COURT OF APPEALS OF IOWA

No. 15-1877
Filed July 27, 2016

IN RE THE MARRIAGE OF ANNIE LAURA BUTLER
AND KEVIN ALVIN BUTLER

Upon the Petition of
**ANNIE LAURA BUTLER,**
　　　Petitioner-Appellee,

**And Concerning**
**KEVIN ALVIN BUTLER,**
　　　Respondent-Appellant.

_____

　　　Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.


　　　Kevin Butler appeals the spousal support awarded. **AFFIRMED.**


　　　Joseph G. Martin of Swisher & Cohrt, P.L.C., Waterloo, for appellant.

　　　Luke D. Guthrie of Frerichs Law Office, Waterloo, for appellee.


　　　Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**DANILSON, Chief Judge.**

Kevin Butler appeals from the spousal support provision of the dissolution decree, ending his twenty-nine-year marriage to Annie Bentley-Butler. The district court ordered Kevin to pay Annie $600 per month. On our de novo review, we find no failure to do equity and we thus affirm.

In reviewing questions related to spousal support, our review is de novo. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). We "accord the trial court considerable latitude." *Id.* (citation omitted). Only if there is a failure to do equity will we disturb the trial court's order. *Id.* "This deference to the trial court's determination is decidedly in the public interest. When appellate courts unduly refine these important, but often conjectural, judgment calls, they thereby foster appeals in hosts of cases, at staggering expense to the parties wholly disproportionate to any benefit they might hope to realize." *Id.* (quoting *In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996)).

Annie and Kevin were married in September 1986. They have no children together. Annie is disabled[1] and receives supplemental security income in the amount of about $733 per month. Annie occasionally worked part-time (about four hours per week). Kevin has been employed by the city of Waterloo for more than twenty years. His income varies because it is dependent on the weather. According to his IPERS statement, his average income for the five-year period of 2010 to 2014 was approximately $54,740 (about $4563 per month). During the

---

[1] Annie has multiple sclerosis, kidney disease, diabetes, and high blood pressure. In 2010, she had a stroke. When asked if she could perhaps work part time, she responded, "Yes. I don't think it would be like gripping too much of anything, because my left hand doesn't still work so well."

course of the marriage, Annie would contribute about $465 per month to marital expenses; she paid for groceries, the car insurance, and home telephone bill, and gave money to Kevin toward the mortgage. Kevin was responsible for the rest of the marital expenses. He stated that the monthly house payment, including taxes and insurance, was $830. In July 2014, Kevin quit making payments on the marital home. In September 2014, Kevin moved out.

In November 2014, Annie filed a dissolution petition and obtained a temporary support order of $1200 per month. She asked that the support order be made permanent.

A dissolution trial was held on October 6, 2015. At the time of trial, the parties owed $997 toward an IRS debt and $571 to a cellular phone company. The marital residence was in foreclosure. Kevin testified that he moved out of the marital home after having saved enough money for a down payment on an apartment for himself. He testified he pays $465 per month for rent. He makes payments on a truck he purchased after the parties separated. He is paying past-due medical expenses from substance-abuse treatment. Kevin also pays $527 per month in child support for his eleven-year-old child he had outside the marriage. Kevin had made no support payments to Annie under the temporary order. He testified he could afford to pay spousal support of "a couple hundred bucks a month. That's all I got left."

The district court determined that for 2015, Kevin was "grossing approximately $5122 per month." The court noted Annie's monthly expenses were about $750—without considering her need to find housing upon foreclosure

of the house. The court ordered Kevin to pay $600 per month in spousal support "until [Annie] draws Social Security or [Kevin] retires, whichever occurs first."

Having reviewed the record anew, and having considered the relevant factors for an award of spousal support provided in Iowa Code section 598.21A (2015),[2] we find no failure to do equity in the trial court's order of $600 per month.

Annie asks for an award of appellate attorney fees. Appellate attorney fees are not a matter of right but may be awarded in this court's discretion. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). Having considered the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal, *see id.*, we award Annie appellate attorney fees of $1500.

**AFFIRMED.**

---

[2] Section 598.21A(1) provides:

> Upon every judgment of annulment, dissolution, or separate maintenance, the court may grant an order requiring support payments to either party for a limited or indefinite length of time after considering all of the following:
> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> g. The tax consequences to each party.
> . . . .
> j. Other factors the court may determine to be relevant in an individual case.